175490 Carlos Clifford Lowe v. United States of America Arguments not to exceed 15 minutes per side Counsel for the Appellant, Melissa Salinas, Supervisory Attorney, to be argued by law student Garrett Fox Good morning and may it please the Court, I am Melissa Salinas, Counsel of Record for Mr. Lowe. I have the honor of introducing a third-year law student at the University of Michigan, Garrett Fox, who will present the argument today. Thank you. Thank you. Good morning, Your Honors, and may it please the Court, my name is Garrett Fox and I represent the Petitioner Appellant, Carlos Lowe. With the Court's permission, I would like to reserve three minutes for rebuttal. You may. Your Honors, Mr. Lowe's armed career criminal act sentence must be vacated. As the government has conceded, this Court decided in Cradler v. United States that Mr. Lowe's third-degree burglary conviction could not withstand Taylor's categorical analysis. Therefore, each of Mr. Lowe's remaining three state court convictions must qualify as an armed career criminal act predicate offense under Taylor if his sentence is to be sustained. Because his 1985 rape conviction does not fall within the ambit of the armed career criminal act's use of force clause, his sentence is invalid and this Court should vacate it and remand to the district court for resentencing. As this Court is aware, the plain language of the statute of conviction, as opposed to the actual underlying offense conduct, is the proper focus of Taylor's categorical inquiry. Because the residual clause of the armed career criminal act is defunct under Johnson and rape is not an enumerated offense in 18 U.S.C. 924E2B2, Mr. Lowe's conviction must fall within the use of force clause to qualify as a predicate offense. The plain language of Tennessee Code 39-2604, which codifies the rape offense in Tennessee, shows that Mr. and the decisions of this Court interpreting that statute show that that conviction does not meet that standard. Now that section that he was convicted under is the force of coercion clause in A1, correct? Correct, Your Honor. Doesn't looking at the plain language of the coercion portion constitute a sufficient element to indicate force? No, Your Honor, and this Court has already examined this precise variant of this precise Tennessee statute and concluded because the term coercion is included. Coercion can, as this Court held in United States v. Arnold, it can but need not involve the use of force. But that was a battery case, right? That was sexual battery. This is unlawful sexual penetration, is the language of the statute. How is that not? That's always a use of force, it seems to me. Well, so the mere fact of, or the fact of sexual penetration has already been held by this Court to not be use of force by itself, and that is shown by this Court's decisions. In which case? In United States v. Wynne and in Ray Sargent, which dealt with crimes that. That was Kentucky, right? Sargent was Kentucky. Yes. And that was, so I think that's a fair point you're making, but let me ask this way. If we said, would you agree that cutting someone's finger off is a use of force? In most circumstances, yes, Your Honor. Okay, well let's explore when it's not. So if I coerce you, or I trick you by fraud, which is one of the elements that you argue is not, I think you would argue is not a use of force, and I say it won't hurt, and you say okay, and then I cut. You say you can do it, and I cut it off. Is it not a use of force? Yes, Your Honor. I think that the force involved in cutting someone's finger off would satisfy that standard. Why wouldn't unlawful sexual penetration, which I think a lot of people would say is worse, be a use of force? Well, Your Honor, that deals with the fact that if this Court finds that the fact of it must include all the variants of the rape offense in, for instance, there was an Ohio law at issue in United States v. Wynne, which dealt with a sexual relationship between a married woman and her stepson. And so if that reasoning is accepted by this Court, then that offense as well, by the mere fact that it does involve sexual penetration, would satisfy the Armed Career Criminal Act's use of force clause. I think you've got great case law on your side. I'm just asking, set that aside for a second. I'm just puzzled how unlawful sexual penetration can ever not be a use of force. Conceptually, Your Honor, it does, strictly speaking, involve the use of some force if this Court is going to accept that some of the authorities that the government cite in its brief suggest that any force, whatever, is sufficient. What do you mean any force whatsoever? So the government argued in its response brief, which discussed these issues for the first time, that the amount of force, any force that's sufficient to cause, or the possibility of injury is enough. So perhaps it's not any force whatsoever, but it can be a very minor amount of force. And that would really... Johnson essentially said slapping someone's enough, right? Johnson one. Right. Said slapping, and that's a minor amount of force compared to an unlawful sexual penetration.  Okay. Go ahead, I'm sorry. So the government's argument in the... Well, so if this Court decides to find that Arnold does not bind it here, because it's true, Arnold did address the sexual battery statute, which imports the rape statute at issue here, rather than the rape statute itself. However, this Court is bound to look at the statutory language of 39.2602, which provides a coercion definition that applies to a broad range of statutes, one of which is the rape statute at issue here. The statute defines coercion as either a threat of kidnapping, extortion, force, or violence. And as the government has, by the government's own admission in its motion to correct its brief that it filed last Friday, some but not all of this conduct falls within the purview of the use of force clause. And that is all that is at stake in Taylor's categorical analysis. Taylor asks what the mere fact of conviction shows. The way the government tries to get around it in their brief, I know you respond to this in your response, is they say those are elements, different elements, not means. Yes. Your Honor, and that goes flatly against this Court's recent en banc decision in Stitt and the Supreme Court's decision in Mathis. What makes something an element is something that the jury must find beyond a reasonable doubt in convicting the defendant. A means, on the other hand, is merely a real world fact that has no legal effect or consequence in this situation. And the two decisions of Tennessee courts that the government cited for the proposition that these are elements are actually fatal to their argument. The first, United States v. Goff, is a sufficiency of the evidence challenge which runs through the different illustrative examples of coercion. It compares the defendant's conduct to, first to kidnapping, then to extortion, and then to force or violence. Presumably, if these were elements that needed to be found beyond a reasonable doubt by a jury, the court could not run them together like this. The jury would have had to find one variant, and then the court could compare the evidence to the variant that the jury convicted under. Otherwise, they're usurping the function of the jury and convicting under a statute which the jury did not examine. State v. Chandler is still, and worse for the government's argument, and explicitly so. It says that the statute has two facets. One is all of these illustrations of coercion run together, kidnapping, extortion, force or violence. It says the other facet is the use of authority, custodial, parental, or official authority over a child under the age of 15 years. So the fact that that court ran them together as well shows that they are means rather than elements. And so the fact that they are means rather than elements shows that the court may not properly consider them without violating the Sixth Amendment. The Sixth Amendment's guarantee is that there is a jury between the defendant and the power of the state. If the fact of conviction does not demonstrate these facts by itself, the court is effectively usurping the function of the jury by considering them in evaluating Mr. Lowe's appeal and the appeal of any other defendant. The Shepard documents say fear or coercion, right? Fear and coercion. Fear and coercion. So your argument is that proves it was under the coercion. Assume, this is debatable, but just assume for me that force or coercion in the statute is divisible itself. Your argument would be, well, this is under coercion and the government supplemental brief proves that coercion is not always violent or a use of force. And as such, we win. Is that a fair summary of your argument? Yes. If it's divisible, which I know you would probably dispute, but nonetheless. So you don't need to dispute it to win, is your argument. We don't need to dispute that the coercion definition is divisible? No, no, no. That force or coercion is divisible. No, because the Shepard document shows that it's coercion rather than force. Fear doesn't. It's not a typo and it's not force or coercion in there. No. Right. Okay. But wait, it is force or coercion in the A-1 variable? No, I mean in the Shepard documents, because fear is nowhere in the statute, right? No, it's not. And so that is a fact that this court may not consider, the fact that fear was present. And yes, the coercion shows that it would be the coercion variant. Then the question of divisibility of the coercion section itself arises. By the government's own admission, it's overbroad because there's at least one way of falling within that coercion statute. A threat of extortion being the most vivid example. That does not satisfy the use of force clause. So if this court finds that that, which it should, that the coercion definition is indivisible, that that mandates a decision in Mr. Lowe's favor under Mathis and Stitt. But the government says that the coercion definition is divisible. Yes, Your Honor. And that's precisely why I was discussing the difference between elements and means. What makes a statute divisible is the fact that it lays out several different variants with the stature of distinct crimes, which the jury must find beyond a reason. And that really puts the burden on the jury to find specific things beyond a reasonable doubt. So as the Tennessee decisions that I just cited show, a jury is not required to find beyond a reasonable doubt that a defendant engaged in a threat of kidnapping as opposed to a threat of extortion. And so that... Any of those are sufficient to prove coercion, which is the element. Yes. And in fact, the Supreme Court in Mathis discusses the idea that the jury could have convicted Mr. Lowe with some of them thinking he engaged in a coercion by a threat of kidnapping and some of them thinking that he engaged in coercion by a threat of force or violence. But that is not beyond a reasonable doubt, and that violates the Sixth Amendment. And, Your Honors, I'll reserve the remainder of my time. Good morning, and may it please the Court. My name is Luke McLaurin, and I'm here on behalf of the United States. The denial of Mr. Lowe's 2235 petition should be affirmed because he failed to meet his burden of showing that Johnson affected his armed career criminal classification. That classification was based on four prior convictions, a 1984 rape conviction, a 1976 rape conviction, a 1999 aggravated assault conviction, and a 1984 third-degree burglary conviction. The United States acknowledges that in light of Johnson and this Court's recent decision in Cradler, the third-degree burglary conviction no longer qualifies as a violent felony. However, Mr. Lowe has not met his burden of showing that the other three ACCA predicates were affected by Johnson. In fact, this Court has already found that reasonable jurists could not debate that the 1999 aggravated assault and the 1976 rape qualify as violent felonies under the use of force clause. The key question the Court has to address today is whether Mr. Lowe has proven that his 1984 rape conviction involved a variant of the offense that only qualified as a violent felony under the residual clause. We maintain that he has not done so. If you look at the Tennessee's statutes defining rape in 1984 and you look at them carefully, what they include are seven different variants of the rape offense. And we get at by beginning with... He was charged under a specific part of that statute that wouldn't really get at the other six, right? I mean, don't we have to focus on the one on which he was charged and how that's characterized? Absolutely. That's the question, is what variant was he was charged with? But I think the Court has to ask the initial question of what are the different variants in the statute, right? What are the options of what he could have been charged with and could have been convicted of? And again, at the end of the day, what we're more concerned with is not what he was charged with but what he was ultimately convicted of. And so looking at the statutes here, we identify seven different variants of the offense. Now, I'll be honest, this statute, you know, these variants are contained in two separate statutes. To Judge Donald's question, just to cut to the chase, you agree he was convicted of rape by coercion? Well, it's actually, we think the evidence in the record is a little bit unclear on this point. I would point out that... Don't you lose if the evidence is unclear? In other words, if the Shepard documents aren't clear, then we don't know and then Arnold and Sargent and all the cases he cited bind us. And, I mean, clearly those held that some of these variants aren't sufficient. We don't lose if the evidence is, makes it unclear because of the posture of this case, because we are, this is not a direct appeal. This is a 2255 motion. On 2255 proceedings, it is the petitioner who has the burden of showing that their sentence is in fact unlawful. And if he can't show that his sentence was in fact based on a predicate that only qualified under the residual clause, then he hasn't shown that his sentence is unlawful. What about the fact that the Shepard documents say fear or coercion? Your Honor, I think that the, that appears to be a typo. But I would agree with you that that does seem to indicate that it is more along the lines of a coercion variant of the offense. But if you actually look at the PSR, which contains undisputed facts about this offense, I think it muddies the waters a little bit in terms of understanding what he was actually convicted of. Paragraph 37 of the PSR indicates that what happened here is that Mr. Lowe dragged the victim across a car seat and forced her to engage in sexual conduct. That certainly sounds like a forced variant of the rape offense, not a coercion variant of the rape offense. And that's the reason why I answered your question earlier that way, as to I think the evidence in the record of what he was actually convicted of is a little bit muddy here. And I acknowledge that the indictment we have uses fear or coercion language, which is a little bit odd. It appears to me that that might have been a typo in the indictment. We can't correct that now. Certainly we can't. But, again, the question is, has Mr. Lowe shown that he was convicted of a variant that only qualified under the residual clause? Do all these elements get the same criminal punishment, whether it's fraud or force? Is the punishment the same? Yes, the punishment is the same, but that's certainly not a problem in terms of visibility. The legislature can define multiple separate offenses that all have the same punishment. If they define them such that they have different punishments, then we know for sure that they're separate offenses. And the mere fact that the coercion definition is included in a separate statute doesn't preclude the possibility that that's identifying that that statute itself is divisible and creates more variants of the offense. In fact, three other circuits have addressed this kind of issue and have found that even when you have a definition section, that can still create multiple variants of an offense. I would refer the Court to the Third Circuit's recent decision in United States v. Henderson, which unfortunately is not cited in any of the briefs here, but it's 841 F. 3rd, 623, and the Eighth Circuit's very recent decision in Martinez v. Sessions, 893 F. 3rd, 1067. And then Martinez v. Sessions is very important because I think it says, look, there is no I said 893 F. 3rd, I'm sorry. 893 F. 3rd, 1067. And Martinez is very clear. They say, look, there is no universal rule that says that when you list something in a separate statutory section, when you have a statute that cross-references another statute, that that means that the things in the other statute are simply means and not elements. What you have to do is you have to actually look at the language of the cross-referenced statute because that cross-referenced statute could contain alternative elements. In Martinez and in Henderson. But isn't your opponent right that coercion and the four ways to commit coercion are just means of the coercion element? We disagree with that point, Your Honor. Our position is that there are four different variants within that coercion definition, that essentially what that statute does is you have a variant of rape by threat of force, rape by threat of kidnapping. Do you disagree with him that the way the jury instruction would read is, if you find the defendant unlawfully sexually penetrated by coercion, their guilty means of committing coercion are? I disagree that that is how it would read under Tennessee law. I think if you look at the Tennessee cases that we cited, they treat these different. Which one? Both Goff and Chandler treat coercion as being, including different types of coercion, that there are different offenses within that understanding. Where in Goff, because I didn't see that. Well, I think what you see in Goff is you see the court looking at this coercion definition and saying, look, this actually contains different offenses, and they analyze them separately. They say, look, let's look at rape by threat of kidnapping. Let's look at rape by threat of extortion. Let's look at rape by threat of force. Let's look at rape by use of parental custodial authority. I think you see it most clearly in Chandler. I'll admit the Tennessee cases we have are not, you don't have any Tennessee case out there that says, oh, well, these are means and these are elements. And the reason we don't have these cases is because that's not a kind of analysis that's done under Tennessee law. A lot of these cases you talked about are sort of advising that there are different factual scenarios by which a defendant can commit rape by coercion. And it's going back, I think, and dealing with the elements versus means criteria. And I'm not sure how that helps you. What I think how it helps me is that what you see the court doing is it's treating these different types of coercions as distinct rape offenses. And I think you see that most clearly in Chandler. Chandler says, look, the offense that the defendant committed here was rape by use of parental authority. That that is the actual offense that we're considering because that's what was at issue here. And I acknowledge these cases, they don't talk about means, elements. They don't use that language. That's language that comes from Mathis. That's what makes part of this analysis so difficult to do is that you have to parse state court opinions and say, well, what does state law mean when state courts are not doing the same analysis that the Supreme Court talked about in Mathis? I don't know that this is relevant to this inquiry, but what was this defendant sentenced to? And where is he in that sentence, in the service of that sentence? In this case, he was sentenced to 235 months of imprisonment. And I believe he has served a little over 10 years of that. He was sentenced in 2006. So I don't know how much credit he had for being in custody before. But, again, the question that the court has to answer is, you know, is this statute divisible? And you can look at state court decisions, but you can also look at the very language of the statute itself. Well, they're agreeing the statute's divisible. They're just not agreeing coercion is divisible. Absolutely. And so the question is, how far is it divisible? How does it divide? And what pieces does it divide into? And our position is that if you look at the definition of coercion, it adds, it basically says that there are essentially four more variants under that coercion. Your ultimate point is if we can't figure it out, they lose, right, because of the procedural posture. My point is that it is his burden to show that he was convicted of a variant that does not count. And he hasn't met that burden. If we find coercion not divisible, do you lose? Not necessarily, Your Honor. It depends on if the court finds that he has met his burden of showing that he was, in fact, convicted of the coercion variant as opposed to the fear variant. There is no fear variant. Excuse me. Exactly. As opposed to the force variant, Your Honor. And whether the documents that are in the record do conclusively establish that he was convicted of the coercion variant as opposed to the force variant. Does Arnold control here? And if not, why not? Arnold doesn't control for a couple reasons. One, Arnold was actually interpreting a different statute. So the technical holding of Arnold isn't actually binding on this court. And I think the same exact elements, right, other than it's sexual battery versus rape. It is looking at that. But I think Arnold didn't make any firm conclusions as to how specifically you parse up the statute. I think I would agree that, and I know nobody is disputing, that what Arnold said, that the statute is divisible, that there are many different rape offenses within the statute, that's true. And I think that nobody is disputing that. Arnold didn't actually go into the specifics of how far you divide the statute, how many different variants are within the statute. Like whether force and coercion are a separate variant, whether coercion contains actually four different variants. Arnold doesn't address any of those questions. But they do say this, as we noted in our first opinion in Mack, coercion may but need not involve force. I would say that that is not binding on this court. That is dicta that I don't think is very helpful, particularly because they were citing Mack. Mack was looking at coercion as defined under Ohio law in an entirely different offense. And I think that, especially post-Mathis, this court has an obligation to look at Tennessee law and how Tennessee defines coercion. So the fact that they observed that coercion generally, as the word is understood, can include things that involve the use of force and not, I don't really think the court should have poured much weight to that, because here we have a Tennessee statutory definition of coercion, which the court should look to. And when you look at the language of that statutory definition, it very clearly sets out four discrete types of coercion. It's not like the Tennessee definition of habitation that was at issue in Stitt, which used language like includes and used broad language indicating that it was talking about illustrative examples. I think you can see this difference in the statutory language if you look at 39-2-602. It has that definition of coercion. It also has a separate definition of fraud. That definition of fraud is exactly the kind of language you would use if you wanted to give illustrative examples, where it talks about fraud shall be defined in normal punishments and shall include but not be limited to. That's the kind of language that indicates the legislature is identifying means versus elements, whereas when you have a statute that lists out categorically discrete types of coercion, that is language that indicates that they are talking about alternative elements of the offense as opposed to alternative means. And I think that you see that discussion about how you can have a definition section that can include, that can actually spell out alternative elements in both the Martinez case and the Henderson case. Your Honor, our position again is that this statute is divisible into seven different pieces, and it is Mr. Lowe's burden to show that his rape offense was for a variant that only qualified under the residual clause. If he cannot prove that, then he is not entitled to 2255 relief. And the evidence in this case does not establish that. There are at least three variants of this statute that we submit would clearly count under the use of force clause, the rape-by-force variant, the rape-by-threat-of-force variant, and the rape-by-threat-of-kidnapping variant. Any one of those variants would count under the use of force clause. And the undisputed facts in the PSR, I agree they're not a Shepard document, but the undisputed facts in the PSR suggest that the rape offense he actually committed was one of those first two variants, either rape-by-force or rape-by-threat-of-force. And he hasn't provided any evidence to show that he was necessarily convicted of one of the variants of the offense that could only have qualified under the residual clause. I point out that even these variants of the offense that might not count under the use of force clause, it's not even clear that they would have counted under the residual clause. So it's not clear that his prior armed career criminal classification in this case was, in fact, based on the residual clause. And if that is not the case, then he is not entitled to 2255 relief. Because he hasn't met his burden of showing that he's eligible for 2255 relief, we ask the court to affirm the denial of Mr. Lowe's 2255 petition. Thank you very much, Your Honor. Thank you, counsel. Rebuttal? Your Honors, very quickly I want to get to the my colleague acknowledged that the PSR is not a Shepard document and can in no way bear on the outcome of this case. How did the PSR get that information? Your Honor, I'm not sure how the PSR obtained that information. It was an investigation by an officer appointed by the court. I'm not entirely sure how they— I mean, are there more Shepard documents out there that we're not aware of? Not to my knowledge, Your Honor. There is the indictment which shows that Mr. Lowe is convicted under the force or coercion variant. And I want to discuss the burden that my colleague has brought up several times. He is attempting to impose the burden expressed in United States v. Potter, which is a decision of this court just this year, which held that a defendant must show that he could have been sentenced only under the residual clause. Now, Potter, just last month, was cabined to very narrow circumstances by this court's published decision in United States v. Raines, which shows that Potter's heightened burden on the petitioner only applies when there is an indication on the record by the district judge that denying explicitly that they used the residual clause in sentencing the defendant. The facts of Potter are unique. The district judge specifically said in evaluating his 2255 motion that he did not rely on the residual clause. But you do have the burden here. I mean, he's right about that, right? Yes, so— And if we can't figure it out, the answer is you lose, right? Well, the question is what is our burden? It is—Mr. Lowe does have a burden as a 2255 petitioner. But that burden is to show that his sentence did not necessarily involve the use, attempted use or threatened use of force against another person. Potter is a threshold— In other words, he has to show that his sentence is unlawful. Yes, he has to show that there is some conduct that does not fall within the use of force clause. Moncrief's and the Supreme Court's repeated instructions are very clear. I'm sorry, some conduct. He has to show his conduct doesn't fall. No, Your Honor. I respectfully disagree. Under Moncrief and the Supreme Court's repeated instructions, a sentence is improper if there is some conduct. If the minimum conduct criminalized under a criminal statute is broader or outside the scope of the Armed Career Criminal Act, then the court may not consider it without violating the Sixth Amendment. No, no, no. You concede the statute's divisible, and you have the Shepard documents. Yes. And so you have to show you fall in one of the elements that is not a use of force to simplify. Well, that does not fall within the use of force clause, yes, Your Honor. And Mr. Lowe has done that. We have provided a Shepard document, or a Shepard document has been provided showing that he was convicted under a variant of the rape statute that this court has already held as overbroad and which the plain would, by the way. So your argument is, just to simplify, you're under the coercion, and the coercion is under Arnold, et cetera, not a use of force or overbroad, and thus you're entitled to relief. Well, yes, Your Honor. Arnold need not control here. I believe that it does, but it need not, because this court recently addressed in Stitt, and the Supreme Court has addressed in Mathis the difference between means and variance, and I think that got a little bit muddled in the discussion with my colleagues. But, I mean, that's just your secondary argument, because if you, the best way for you to win is Arnold. Well, the best way for us to win, yeah, Arnold proves it, but the coercion definition helps us. It need not be indivisible. It is indivisible, but it does help us, because it shows how Tennessee defines the statute, and the decisions in Goff and Chandler also show that those variants do not have the status of elements. If they did, then what the court did, what the appellate court did there would violate the Sixth Amendment. Thank you, Your Honors. For these reasons, we ask that you vacate Mr. Lozarum's criminal act sentence and remand to the district court for resentencing. Thank you, Counsel, and Mr. Fox, I think all three of us would like to compliment you on a very fine argument. Thank you, Your Honor. Well done.